IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

UNITED STATES OF AMERICA       )
                               )
                               )
                               )
                               )
v.                             )        CRIMINAL ACTION NO. 04-283
                               )
                               )
ISMAEL JUAREZ CISNEROS,        )
                               )
          Defendant.           )


## MEMORANDUM OPINION

THIS MATTER is before the Court on Defendant Ismael Juarez Cisneros's Motion to Suppress Defendant's Statements for Violation of the Vienna Convention on Consular Relations.  The Court denied Defendant Ismael Juarez's Cisneros's motion by Order dated February 24, 2005, and issues this opinion to explain that ruling.  Defendant Ismael Juarez Cisneros and three co-defendants were charged with (1) Conspiracy to Tamper with a Witness or an Informant, 18 U.S.C. § 1512(k), (2) Conspiracy to Retaliate Against a Witness or an Informant, 18 U.S.C. § 1513(e), (3) Killing a Person Aiding a Federal Investigation, 18 U.S.C. §§ 2 & 1121(a)(2), (4) Tampering with a Witness or an Informant, 18 U.S.C. §§ 2 & 1512(a)(1), and (5) Retaliating Against a Witness or an Informant, 18 U.S.C. §§ 2 & 1513(a)(1).  The government filed a Notice of Intent to Seek a Sentence of Death against all

four defendants on October 1, 2004.

Defendant Ismael Juarez Cisneros, a Mexican national, made statements to detectives from the Alexandria Police Department, the Arlington County Police Department and a special agent of the FBI on June 16, 2004, and to detectives from Alexandria and Arlington on June 22, 2004.  Defendant Ismael Juarez Cisneros asserts that these statements should be excluded by the Court because he was not advised of his right to contact the Mexican Consulate, in violation of Article 36 of the Vienna Convention on Consular Relations.  *See* Vienna Convention on Consular Relations ("VCCR," "Vienna Convention"), *opened for signature* Apr. 24, 1963, 21 U.S.T. 77.  The questions before the Court are (1) whether Defendant Ismael Juarez Cisneros has shown that his rights under Article 36 of the Vienna Convention were violated and that he suffers prejudice as a result, and if so, (2) whether exclusion is the proper remedy.  The Court denies Mr. Cisneros's motion to suppress for violation of the Vienna Convention because Mr. Cisneros failed to demonstrate that his trial was prejudiced by this violation.  In addition, even if his trial were prejudiced, a judicially crafted remedy such as suppression is not appropriate because the VCCR does not confer constitutional rights on defendants.

## I.  BACKGROUND

*Mr. Ismael Juarez Cisneros*

Defendant Ismael Juarez Cisneros ("Defendant," "Mr. Cisneros") is a Mexican national who was born and raised in Mexico City, Mexico.  His native language is Spanish, and he requires interpretation into English to communicate with his attorneys and the Court.  He speaks limited English from his experience as a laborer in the United States.  At age seventeen, Mr. Cisneros illegally crossed the border from Mexico into the United States making his way to Washington, D.C. where he worked as a landscaper and unskilled laborer.  In June 1999, Mr. Cisneros was arrested for unlawful wounding in Fairfax County, Virginia.  He was convicted on October 1, 1999, turned over to INS custody, and deported to Mexico on May 30, 2000.

Shortly after deportation, Mr. Cisneros again illegally entered the United States.  On November 18, 2003, Mr. Cisneros was arrested following a routine traffic stop in Vienna, Virginia.  After determining that Mr. Cisneros was in the United States illegally, the arresting officer contacted an Immigration and Customs Enforcement ("ICE") agent who took Mr. Cisneros into custody.  On November 23, 2003, Mr. Cisneros was charged with Illegal Reentry in Violation of 8 U.S.C. § 1326(a) in the United States District Court for the Eastern District of Virginia.  On February 1, 2004, Mr. Cisneros pled guilty to a criminal

information.  On April 4, 2004, Mr. Cisneros was sentenced to a
term of 46 months imprisonment.

On June 16, 2004, Mr. Cisneros was questioned about the
murder of Ms. Brenda Paz ("Ms. Paz"), the victim in this case, by
Detectives Victor Ignacio ("Detective Ignacio") of the Alexandria
Police Department, Detectives Ricky Rodriguez ("Detective
Rodriguez") and Oscar Santiago of the Arlington County Police
Department and Special Agent David Solis of the FBI.  He was
again questioned by Detectives Ignacio and Rodriguez on June 22,
2004.  At the beginning of both sessions, Mr. Cisneros was
advised of his *Miranda* rights in Spanish both orally and in
writing.  The transcript of each session indicates that he read
the following declaration out loud, in Spanish, and then signed a
written waiver of his *Miranda* rights, also in Spanish:  "I have
read this statement of my rights and I understand what my rights
are. I am willing to make a statement and answer questions.  No
threats, promises, or offers of reward have been made to me."
*See* Govt. Opp'n Def. Cisnero's [*sic*] Mot. Suppress (hereinafter
"Govt Opp'n") Exs. A, B, C & D.

During the questioning on June 16, 2004, Mr. Cisneros told
the detectives he was born in the Federal District in Mexico on
August 21, 1978.  In addition, the questioning elicited damaging
statements from Mr. Cisneros including what the government
contends are facts about the murder, such as who was present and

4

when and how it occurred.  At no point in his interactions with the United States criminal justice system, from 1999 until 2004, was Mr. Cisneros told that he could seek assistance from the Mexican Consulate.

Mr. Cisneros was indicted for the murder of Ms. Paz on June 24, 2004, and he was arraigned before this Court on July 14, 2004.  Ms. Nina J. Ginsberg ("Ms. Ginsberg"), one of two attorneys appointed by the Court to represent Mr. Cisneros, had her first contact with a representative of the Mexican government on July 26, 2004.  Ms. Ginsberg spoke with Ms. Sandra Babcock, Esq. ("Ms. Babcock"), lead counsel for the Government of Mexico in the Mexican Capital Legal Assistance Program.  Since July 26, 2004, Ms. Ginsberg has received ongoing assistance from Ms. Babcock, Ambassador Edgardo Flores Rivas ("Ambassador Flores Rivas"), the Mexican Consul General in Washington, D.C., and several employees of the Mexican Consulate, Office of Protection, in Washington, D.C.

On or about August 24, 2004, Ambassador Flores Rivas wrote to Attorney General John Ashcroft stating Mexico's opposition to the death penalty and requesting that the death penalty not be pursued in the case of Mr. Cisneros.  On September 3, 2004, Ambassador Flores Rivas wrote a letter to this Court in support of Mr. Cisneros's first motion to continue the trial date.  Laura O. Dietz ("Ms. Dietz") of the Mexican Consulate, Office of

Protection, visited Mr. Cisneros at the Arlington County Detention Facility on September 15, 2004. According to Ms. Ginsberg, "[t]he Government of Mexico continues to provide counsel and Mr. Juarez Cisneros with invaluable assistance in the preparation and presentation of this case, both in the United States and in Mexico." Aff. Supp. Mot. Suppress Def.'s Statement Violation VCCR ¶ 6.

Mr. Cisneros asserts that his rights under Article 36 of the Vienna Convention on Consular Relations ("Convention," "VCCR") were violated because he was never told that he had the right to contact the Mexican Consulate. In essence, he argues that after the International Court of Justice's ("ICJ") decision in *Avena and Other Mexican Nationals (Mex. v. U.S.)* 2004 I.C.J. 128 (March 31, 2004) (hereinafter "Avena"), the courts of the United States must provide a judicial remedy for violations of the VCCR; merely apologizing to the detained national's embassy is insufficient to meet treaty requirements. *See* Mot. Suppress Def.'s Statements at 9 (citing various *pre-Avena* United States circuit courts of appeal decisions holding that suppression or dismissal of an indictment is an improper remedy for violation of the VCCR).

Mr. Cisneros moves the Court to suppress the statements he made to detectives on June 16 and 24, 2004, as a remedy for the alleged violation of the VCCR. As an alternative to suppression, at oral hearing, Mr. Cisneros suggested that the Court could

strike the government's Notice of Intent to Seek the Death Penalty.  In support of a judicial remedy generally, Mr. Cisneros asserts that while the VCCR is silent on the issue of remedies, the *Avena* judgment "makes clear that remedies *are* available for violations of Article 36 and *must* be provided through judicial proceedings. 2004 ICJ 128 ¶ 141."  Def.'s Mot. Suppress Def.'s Statements at 14-19 (emphasis in original).  Further, Mr. Cisneros argues that it would be nonsensical to provide no remedy for a violation of the right to consular notification.  *Id.* at 16 (citing, *inter alia*, *Bell v. Hood*, 327 U.S. 678, 684 (1948)) ("[W]here federally protected rights have been invaded, it has been the rule from the beginning that courts will be alert to adjust their remedies so as to grant the necessary relief").  In addition, Mr. Cisneros asserts that the remedy for a treaty violation is the *status quo ante*, that is, the defendant should be put in the position he was in before the violation occurred. *Id.* at 7 (citing RESTATEMENT (THIRD) OF THE LAW OF FOREIGN RELATIONS 901 (1987)).  Consequently, his statement should be suppressed.

The government raises numerous arguments in opposition to Defendant Cisneros's motion.  The crux of its argument, however, is that (1) Mr. Cisneros has not demonstrated that he suffered any prejudice as a result of the alleged violation of his rights under the VCCR since he has received substantial assistance from the Mexican Consulate since July 26, 2004, and (2) based on

7

existing precedent, including Fourth Circuit precedent, the remedy of suppression is not warranted even if Mr. Cisneros does make out a violation of his rights under the VCCR.

The Court held an evidentiary hearing on this motion on January 4 and 5, 2005.  During the hearing, Mr. Cisneros testified that he would have contacted the Mexican Consulate had he been alerted to his rights of consular notification.  He also testified that he would have followed any advice offered by the Mexican Consulate, including advice not to make any statements to law enforcement.  In addition, representatives from the Mexican Consulate testified about the assistance and advice they would have provided to Mr. Cisneros before his police interrogation.


## II. DISCUSSION

The Court denies Mr. Cisneros's motion because he has not shown that his trial is prejudiced by the VCCR violation and because suppression is not the appropriate remedy for a VCCR violation since the VCCR does not confer constitutional rights on defendants.


*Background on the Convention*

The United States and several other countries signed the Vienna Convention on Consular Relations in 1963.  The United States ratified the treaty in 1969, making it binding on the

8

states and giving it the force of federal law under the Supremacy
Clause of the United States Constitution.  U.S. Const. Art. VI,
cl. 2 ("...and all Treaties made, or which shall be made, under
the Authority of the United States, shall be the supreme Law of
the Land; and the Judges in every State shall be bound thereby,
any Thing in the Constitution or Laws of any State to the
Contrary notwithstanding").  Article 36(1)(b) of the Vienna
Convention states:

> [I]f he so requests, the competent authorities of the
> receiving State shall, without delay, inform the consular
> post of the sending State if, within its consular district,
> a national of that State is arrested or committed to prison
> or to custody pending trial or is detained in any other
> manner.  Any communication addressed to the consular post by
> the person arrested, in prison, custody or detention shall
> also be forwarded by the said authorities without delay.
> The said authorities shall inform the person concerned
> without delay of his rights under this sub-paragraph.

VCCR, Art. 36(1)(b).

In addition to the VCCR, the United States also ratified the
Optional Protocol to the Vienna Convention concerning the
Compulsory Settlement of Disputes, April 26, 1963, 596 U.N.T.S.
487.  The Optional Protocol states that "[d]isputes arising out
of the interpretation or application of the Convention shall lie
within the compulsory jurisdiction of the International Court of
Justice and may accordingly be brought before the Court by a
written application made by any party to the dispute being a
Party to the present Protocol."  *Id.*  In other words, the United

9

States agreed to be bound by the decisions of the International Court of Justice as to the VCCR.

Both the Optional Protocol and the VCCR are self-executing treaties, and thus, do not require implementing legislation. *See Hearing Before the Senate Committee on Foreign Relations*, S. Committee on Foreign Relations, S.Exec. Rep. No. 91-9, 91st Cong. At 5 (1st Sess. 1969) (statement of J. Edward Lyerly, Deputy Legal Adviser for Admin., U.S. Dep't of State).  Nevertheless, the Department of Justice and the Immigration and Naturalization Service enacted agency regulations to ensure compliance with the requirements of Article 36.  8 C.F.R. 236.1 (e) (2002) states that every detained alien is to be notified that he or she may communicate with consular or diplomatic officers of his or her country.  *See also* 28 C.F.R. 50.5(a)(1) (2002).  In addition, the Department of State has provided guidance to the law enforcement community as to its obligations to foreign nationals under the VCCR.  *See* UNITED STATES DEP'T OF STATE, CONSULAR NOTIFICATION AND ACCESS: INSTRUCTIONS FOR FEDERAL, STATE, AND LOCAL LAW ENFORCEMENT AND OTHER OFFICIALS REGARDING FOREIGN NATIONALS IN THE UNITED STATES AND THE RIGHTS OF CONSULAR OFFICIALS TO ASSIST THEM, *available at* <http://travel.state.gov/law/CNA_book.pdf> (hereinafter "Instructions").  The Instructions state that regardless of whether a detainee's country has a mandatory notification agreement with the United States,

*the foreign national must be told of the right of consular*
*notification and access.*  The foreign national then has the
option to decide whether he/she wants consular
representatives notified of the arrest or detention... *If*
*the detainee requests notification, a responsible detaining*
*official must ensure that notification is given to the*
*nearest consulate or embassy of the detainee's country*
*without delay.*

*Id.* at 14 (emphasis in original).  In addition, the State

Department's Instructions specify that a law enforcement officer

is not required to ask everyone arrested or detained whether he

or she is a foreign national.  Rather, "[i]f you have reason to

question whether the person you are arresting or detaining is a

U.S. citizen... you should inquire further about nationality so

as to determine whether any consular notification obligations

apply."  *Id.* at 18.  According to the same publication, the

following kinds of detentions are covered by the VCCR:

> While there is no explicit exception for short detentions,
> the Department of State does not consider it necessary to
> follow consular notification procedures when an alien is
> detained only momentarily, e.g., during a traffic stop.  On
> the other hand, requiring a foreign national to accompany a
> law enforcement officer to a place of detention may trigger
> the consular notification requirements, particularly if the
> detention lasts for a number of hours or overnight.  The
> longer a detention continues, the more likely it is that a
> reasonable person would conclude that the Article 36
> obligation is triggered.

*Id.* at 19.  Giving the *Miranda* warning alone does not satisfy the

requirements of the VCCR according to the State Department.  *Id.*

The State Department further states that if a foreign national

requests consular officials be notified, "there should be no

11

deliberate delay, and that notification should occur as soon as reasonably possible under the circumstances." *Id.* at 20.  DOS expects consular notification to occur within 24 hours of the request for notification, "and certainly within 72 hours." *Id.* DOS does not specify what remedies are required when violations of the VCCR occur.  Instead, it simply points out that some alien defendants are attempting to obtain judicial remedies or executive clemency.  *Id.* at 22 (providing no perspective on the appropriateness of such remedies).  Former Attorney General John Ashcroft acknowledged in a letter to Ambassador Carlos de Icaza of Mexico that criminal defendants have a right to seek judicial remedies for violations of the VCCR resulting in prejudice:

> Consistent with the opinion of the International Court of Justice in *Mexico v. United States of America* (Case Concerning Avena and Other Mexican Nationals), Mr. Guerrero is free to argue in the trial court that his rights under Article 36 of the Vienna Convention were violated by a failure to inform him of his right to contact his consulate once it was realized that he was a foreign national or there were grounds to think that he was probably a foreign national and to argue that prejudice resulted from the alleged Vienna Convention violation.

Letter of Attorney General John Ashcroft to His Excellency Carlos de Icaza, Ambassador of Mexico, June 3, 2004.

The International Court of Justice ("ICJ") has issued two opinions in the last several years that discuss the United States' obligations under the Vienna Convention, *LaGrand Case* (F.R.G. v. U.S.) 2001 ICJ 104 (June 27, 2001) and *Avena*. 2004 ICJ

12

128.   In *Lagrand*, the ICJ held that Article 36(1)(b)'s language "creates individual rights" of consular notification, meaning that when a state does not provide consular notification, that individual's rights are violated.   *Id.* at ¶ 77 (holding, also, that by not informing the LaGrand brothers of their rights of consular notification in a timely fashion, the United States breached its obligations to Germany and to the LaGrand brothers). In addition, the ICJ concluded that the United States violated its obligations to Germany and the LaGrand brothers under Article 36 by "not permitting the review and reconsideration" of the convictions and sentences of the LaGrand brothers.   *Id.* at ¶ 128(4).

In *Avena,* the ICJ made several interpretations of Article 36 that are relevant to this case.  First, it held that Article 36's admonition to inform individuals "without delay" of their rights to contact their consulate "cannot be interpreted to signify that the provision of such information must necessarily precede any interrogation, so that the commencement of interrogation before the information is given would be a breach of Article 36."  *Avena* at ¶ 87.  Nevertheless, an arresting authority should apprise an individual of his or her rights under the VCCR "as soon as it is realized that the person is a foreign national, or once there are grounds to think that the person is probably a foreign national." *Id.* at ¶ 88 (finding a VCCR violation when a Mexican citizen was

13

informed of his consular rights 40 hours after his arrest when
the arrest report stated he was born in Mexico).  In addition, in
the ICJ's view, whether a consulate would have offered assistance
is irrelevant to whether a violation of the convention is
established.  *Id.* at ¶ 102.  The court also considered what are
appropriate remedies for a VCCR violation.  The ICJ held that

> the remedy to make good these violations should consist in
> an obligation on the United States to permit review and
> reconsideration of these nationals' cases by United States
> courts...with a view to ascertaining whether in each case
> the violation of Article 36 committed by the competent
> authorities caused actual prejudice to the defendant in the
> process of administration of criminal justice.

*Id.* at ¶ 121.  The ICJ chose not to address a submission by
Mexico that applying the exclusionary rule to confessions would
be the appropriate remedy in some cases.  Instead, the ICJ
asserted that United States courts would have to examine the
legal consequences flowing from the beach of obligations under
Article 36 and remedy them accordingly.  *Id.* at ¶ 127.

One of the Mexican nationals whose rights were adjudicated
in *Avena*, Jose Ernesto Medellin, subsequently sought review and
reconsideration of his conviction and sentence through a federal
writ of habeas corpus.  The district court denied his petition
for writ of habeas corpus and for certificate of appealability.
The Fifth Circuit Court of Appeals also denied the application.
The United States Supreme Court granted certiorari in December

2004 to consider the following:

> first, whether a federal court is bound by the International
> Court of Justice's (ICJ) ruling that United States courts
> must reconsider petitioner José Ernesto Medellín's claim for
> relief under the Vienna Convention... without regard to
> procedural default doctrines; and second, whether a federal
> court should give effect, as a matter of judicial comity and
> uniform treaty interpretation to the ICJ's judgment.

*Medellin v. Dretke*, 125 S.Ct. 2088, 2089 (2005).  On February 28,

2005, President George W. Bush issued a memorandum explaining

that "the United States will discharge its international

obligations under the decision of the International Court of

Justice in *[Avena]*, by having state courts give effect to the

decision in accordance with general principles of comity in cases

filed by the 51 Mexican nationals addressed in that decision."

Mem. From Pres. Bush For Atty. Gen'l., Feb. 28, 2005.  As a

result of the President's Memorandum, Mr. Medellin filed a writ

of habeas corpus in the Texas Court of Criminal Appeals.  On May

23, 2005, the Supreme Court held that it had improvidently

granted the writ of certiorari since the Texas courts might

provide Mr. Medellin with the review he seeks.  *Medellin*, 125

S.Ct. at 2092.  In addition, the Court discussed the numerous

hurdles that Mr. Medellin would face should he seek federal

habeas review after the state court judgment.  *Id*. at 2091-92.

15

*Mr. Cisneros Has Failed to Show Prejudice*

The Court denies Mr. Cisneros's motion to suppress based on violation of the Vienna Convention because, even assuming he has individually enforceable rights under the VCCR and his rights under the VCCR were violated, he fails to show his trial was prejudiced as a result of the violation.  The Fourth Circuit has issued no published opinions on direct appeals of denials of motions to suppress, dismiss the indictment or dismiss the death notice for violation of Article 36 of the VCCR.  Nevertheless, in ruling on a habeas petition, the Fourth Circuit explained that, assuming without deciding that the VCCR creates individual rights, "it certainly does not create *constitutional* rights." *Murphy v. Netherland*, 116 F.3d 97, 99-100 (4th Cir. 1997).  In its unpublished opinions addressing direct appeals of denial of motions for remedies for violation of the VCCR, the Fourth Circuit consistently holds that a defendant must show prejudice to prevail because no constitutional right has been violated, and the Fourth Circuit has never found a defendant to establish prejudice.  *See, e.g., United States v. Zhang*, No. 99-4901, 2000 WL 951401, at **2 (4th Cir. July 11, 2000) (denying motion to dismiss indictment of Chinese citizen for law enforcement's failure to notify him of his rights to contact the Chinese Embassy because he failed to establish prejudice); *United States v. Ediale*, No. 98-4834, 1999 WL 991435, at **1 (4th Cir. Nov. 2,

16

1999) (denying motion to suppress statements made to FBI agents by a Nigerian granted political asylum because Defendant had not shown prejudice by testifying that, had he been given the opportunity to contact his consulate, he would have availed himself of it, and the consulate would have informed him of his rights under American law, since the FBI agents advised him of his rights under *Miranda v. Arizona*, 38 U.S. 46 (1966) and he signed a waiver saying he understood those rights); *United States v. Salas*, No. 98-4374, 1998 WL 911731 (4th Cir. Dec. 31, 1998) (holding Defendant did not establish prejudice sufficient to support his motion to suppress because he did not assert how the failure to notify him of his right to contact the consulate of the Dominican Republic would have "affected the outcome of his case"); *United States v. Guerrero*, 2002 WL 2022629, at **1 (4th Cir. Sept. 5, 2002) ("[a]s Guerrero cannot demonstrate and the record does not reveal any prejudice resulting from the failure to inform, we find this contention meritless"); *United States v. Beckford*, 2000 WL 376155, at **13 (4th Cir. 2000) (holding that the defendant was not entitled to have his death penalty notice quashed for violation of the VCCR because he "was not sentenced to death and he has not demonstrated how the failure would have otherwise affected the outcome of his case"); *United States v. Maldonado-Vences*, 1998 WL 911711 (4th Cir. Dec. 31, 1998) (affirming denial of motion to suppress for VCCR violation for no

17

prejudice when Defendant contended he would have contacted the consulate and would have followed directions by the consulate not to make statements to police).

Mr. Cisneros's motion to suppress for failure to notify him of his rights under the VCCR is denied because he fails to show his case was prejudiced as a result of the treaty violation. Mr. Cisneros testified at the hearing on the motion to suppress that, had he been given the opportunity to call the Mexican Consulate, he would have heeded consular officials' advice to make no statements to law enforcement. Mr. Cisneros was informed of his right to remain silent by the detectives who interrogated him, in Spanish, yet he still gave extensive, incriminating statements. He assented to waiver of his *Miranda* rights both orally and in writing. Given these facts, Mr. Cisneros did not meet the burden of showing that he would have listened to the Mexican consulate and that he was prejudiced by the VCCR violation. *See United States v. Moreno*, 122 F.Supp.2d 679, 683 (E.D.Va. 2000) (holding that Defendant did not establish prejudice when he waived his *Miranda* rights prior to providing a statement). Furthermore, the Mexican Consulate did render valuable assistance to Mr. Cisneros by helping to make witnesses available during the penalty phase of this death penalty trial and by providing assistance to Mr. Cisneros's attorneys. Consequently, because Mr. Cisneros has not made the requisite showing of prejudice, the Court denies his

18

motion to suppress for violation of the VCCR.

The district court must adhere to existing precedent in rendering this decision today.  The Court concurs with the Fourth Circuit in expressing "disenchantment" with the continued practice of local Virginia police not adhering to the requirements of the VCCR.  *Republic of Para. v. Allen*, 134 F.3d 622, 629 (4th Cir. 1998).  "There are disturbing implications in that conduct for the larger interests of the United States and its citizens."  *Id.*


*Judicially Created Remedies Are Not Appropriate for VCCR Violations*

Even assuming Mr. Cisneros has individual rights under the VCCR, he has standing to assert these rights, his rights were violated, and as a result of the violation his trial was prejudiced, the Court denies Mr. Cisneros's motion to suppress because he is not entitled to the judicially created remedy of exclusion for this treaty violation.  In *United States v. Li*, 206 F.3d 56 (1st Cir. 2000), the First Circuit held that regardless of whether the Vienna Convention creates individual rights, suppression of evidence is not an appropriate remedy.  *Id.* at 60. In support of its decision, the First Circuit explained that treaties "do not generally create rights that are privately

19

enforceable in federal courts," and it pointed to a historical presumption against the remedy of exclusion except for violations of "the most fundamental of rights," such as those secured by the Fourth, Fifth, and Sixth Amendments to the Constitution.  *Id.* at 60-61.  Although *Avena* may have altered the first justification set forth by the First Circuit, it has not changed the second justification – that exclusion is an extreme remedy reserved for the most important of our rights.  *See Medellin*, 125 S.Ct. at 2091 n.3 (implying, by stating that it had no final ICJ adjudication before it about whether the VCCR created individually enforceable rights at the time it decided *Breard v. Greene*, 523 U.S. 371 (1998), that now, after *Avena*, such rights may definitively exist).  Similar to the First Circuit, the Fifth, Sixth, Seventh, Ninth, and Eleventh Circuit Courts of Appeals have held that suppression of evidence is not an appropriate remedy for violations of the VCCR.  *See United States v. Jimenez-Nava*, 243 F.3d 192 (5th Cir. 2001); *United States v. Page*, 232 F.3d 536 (6th Cir. 2000); *United States v. Felix-Felix*, 275 F.3d 627 (7th Cir. 2001), *superseded by statute on other grounds, United States v. Rodriguez-Cardenas*, 362 F.3d 958 (7th Cir. 2004); *United States v. Lombera-Camorlinga*, 206 F.3d 882 (9th Cir. 2000); *United States v. Cordoba-Mosquera*, 212 F.3d 1194 (11th Cir. 2000).  Although the Fourth Circuit has not directly addressed the question whether judicially created remedies such

20

as suppression are appropriate remedies for a VCCR violation, it has indicated that treaty violations are different than constitutional rights violations.  *See Murphy*, 116 F.3d at 99-100 (stating that violations of treaties are not violations of constitutional rights).  Because judicially created remedies are generally reserved for violations of constitutional rights, not rights flowing from treaties, suppression is not an appropriate remedy here.  Consequently, the Court denies Mr. Cisneros's motion to suppress.

### III.  CONCLUSION

Because Mr. Cisneros fails to establish that the outcome of his trial was prejudiced as a result of the violation of his VCCR rights, and because, even if his trial was prejudiced, judicially created remedies such as suppression or dismissal of a death notice are exclusive to constitutional right violations, the Court denies Mr. Cisneros's motion.  For the foregoing reasons, it is hereby

ORDERED that Defendant Ismael Juarez Cisneros's Motion to Suppress is DENIED.

The Clerk is directed to forward a copy of this Order to counsel of record.

ENTERED this __21st__ day of July, 2005.


_____/s/_____
Gerald Bruce Lee
United States District Judge


Alexandria, Virginia
7/21/05

22