IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| | ) | |
| v. | ) | CRIMINAL ACTION NO. 04-283 |
| | ) | |
| | ) | |
| ISMAEL JUAREZ CISNEROS, | ) | |
| | ) | |
| Defendant. | ) | |

### MEMORANDUM ORDER

THIS MATTER is before the Court on Defendant Ismael Juarez Cisneros's Proposed Procedures for Determining Mental Retardation.  The defendant moves the Court to adopt certain procedures to determine whether he is mentally retarded, and therefore, ineligible for a sentence of death.  The issues presented are (1) what is the definition of "mentally retarded" under the Federal Death Penalty Act; and (2) what procedure the Court will observe in determining Mr. Cisneros's mental state to comply with the requirements of *Atkins v. Virginia*, 536 U.S. 304 (2002).  The Court holds that it will use the definition of mental retardation proposed by Mr. Cisneros, based on the American Association of Mental Retardation (AAMR)'s definition, as cited by the Supreme Court in *Atkins*.  After the presentation of evidence during the penalty phase of this capital murder trial, the jury will be instructed to make a finding of whether the defendant has established that he is mentally retarded by a

preponderance of the evidence.  If the jury unanimously finds that the defendant is mentally retarded, he will not be eligible for the death penalty under *Atkins*.  If the finding is not unanimous, however, the jury will be instructed that any juror who finds that the defendant is mentally retarded should consider their finding as a mitigating factor.

## I.  BACKGROUND

The government alleged that Defendants Denis Rivera, Oscar Antonio Grande, Ismael Juarez Cisneros, and Oscar Alexander Garcia-Orellana conspired together to murder Brenda Paz, who was preparing to testify against Denis Rivera in his trial for the murder of Joaquin Diaz.  All four defendants and the victim were members of the Mara Salvatrucha, also known as "MS-13."  The government filed a Notice of Intent to Seek a Sentence of Death against all four defendants on October 1, 2004.

On May 18, 2005, the jury found Defendants Denis Rivera and Oscar Alexander Garcia-Orellana not guilty of all counts. Defendants Oscar Antonio Grande and Ismael Juarez Cisneros were found guilty of all counts.  Mr. Cisneros has previously notified the Court and the government that he may be mentally retarded and has moved the court to adopt certain procedures with respect to determine whether he is mentally retarded, and therefore, ineligible for a sentence of death.

## III.   DISCUSSION

### A.   Standard of Review

### Federal Death Penalty Act (FDPA)

Since its reinstatement in 1988, the Federal Death Penalty Act prohibits the execution of mentally retarded defendants. Specifically, the FDPA provides:

> A sentence of death shall not be carried out upon a person who is mentally retarded.  A sentence of death shall not be carried out upon a person, who, as a result of mental disability, lacks the mental capacity to understand the death penalty and why it was imposed on that person.

18 U.S.C. § 3596(c). The FDPA also identifies mental health as a possible mitigating factor in 18 U.S.C. § 3592(a)(1) (Impaired Capacity) and (a)(6) (Disturbance).

### *Atkins v. Virginia*

In *Atkins v. Virginia*, the United States Supreme Court held that the execution of a mentally retarded individual is a violation of the Eighth Amendment's prohibition of cruel and unusual punishment.  536 U.S. 304.  The Court "left to the states the task of developing appropriate ways to enforce the constitutional restriction upon [their] execution of sentences." *Id*. at 317 (citations omitted).  The Court's decision in *Atkins* makes clear, however, that the prohibition on execution applies to all defendants that "fall within the range of mentally retarded offenders about whom there is a national consensus."

536 U.S. at 317, 317 n.22.  Accordingly, when adopting a

statutory definition of mental retardation, states cannot adopt a

definition that fails to protect any individuals who have mental

retardation under a definition embraced by a national consensus.


**B. Analysis**

**Definition of Mental Retardation**

The Court holds that it will use the definition of mental

retardation proposed by Mr. Cisneros that is based on the

American Association of Mental Retardation (AAMR)'s definition

cited by the Supreme Court in *Atkins*.  In *Atkins*, the Supreme

Court cited the definition of mental retardation as promulgated

by the AAMR:

> The American Association of Mental Retardation (AAMR)
> defines mental retardation as follows: Mental retardation
> refers to substantial limitations in present functioning.
> It is characterized by significantly subaverage intellectual
> functioning, existing concurrently with related limitations
> in two or more of the following applicable adaptive skill
> areas: communication, self-care, home living, social skills,
> community use, self-direction, health and safety, functional
> academics, leisure, and work.  Mental retardation manifests
> before age 18.

*Atkins*, 536 U.S. at 308 n.3 (citations omitted).

While the *Atkins* Court in *Atkins*, allowed the states to

adopt their own definitions of mental retardation, the definition

must encompass  all defendants that "fall within the range of

mentally retarded offenders about whom there is a national

consensus."  536 U.S. at 317, 317 n.22.

In response to *Atkins*, Virginia enacted legislation setting forth a process to enforce the constitutional restriction on the execution of mentally retarded individuals and established a definition of mental retardation.  Virginia defines mental retardation as:

> a "disability, originating before the age of 18 years, characterized concurrently by (i) significantly subaverage intellectual functioning as demonstrated by performance on a standardized measure of intellectual functioning administered in conformity with accepted professional practice, that is at least two standard deviations below the mean, and (ii) significant limitations in adaptive behavior as expressed in conceptual, social, and practical adaptive skills

Va. Code § 19.2-264.3:1.1(A) (Michie 2005). The Court will use the following jury instruction defining mental retardation, as proposed by the defendant, for determining whether Mr. Cisneros is proven mentally retarded by a preponderance of the evidence:

<u>Mental Retardation-Defined</u>

> The term "mentally retarded" means the condition of significantly sub-average intellectual functioning existing concurrently with significant deficits in adaptive behavior, both of which were manifested before the age of 18.
> The term "significantly sub-average intellectual functioning" means an intelligence quotient of 70 or below.
> The term "significant deficits in adaptive behavior" means diminished capacity to understand and process information, to abstract from mistakes and learn from experience, to engage in logical reasoning, to control impulses, and to understand others' reactions.

*See* App. at 1, JURY INSTRUCTION NO. 11 (citing *Atkins*, 536 U.S. at 318).

**The Jury's Determination of Mental Retardation**

The jury must determine, by a preponderance of the evidence, whether the defendant is mentally retarded.  Under Virginia law the defendant bears the burden of establishing that he is mentally retarded by a preponderance of the evidence.  *See Walker v. True*, 399 F.3d 315, 320 (4th Cir. 2005)(holding that habeas petitioner was entitled to evidentiary hearing on *Atkins* claim that his mental retardation precluded his execution); *see also* Va. Code Ann. § 19.2-264.3:1.1.

On May 18, 2005, the jury found Ismael Juarez Cisneros guilty on all counts.  Accordingly, the case will proceed to a penalty phase under 18 U.S.C. § 3593.  The parties will have the opportunity to present evidence, including expert testimony, regarding the defendant's possible mental retardation.  After considering the evidence presented during the penalty phase in its entirety by both the defendant and the government, the case will proceed to the jury for deliberations.  The issue of mental retardation will be listed as a mitigating factor on the special verdict form among the other mitigating factors. The mitigating factor will read as follows:

> That ISMAEL JUAREZ CISNEROS meets the diagnostic criteria for a finding of mental retardation.
> NUMBER OF JURORS WHO SO FIND_____

*See* App. at 2, Cisneros, Special Verdict Form, Mitigating Factor 16.   On the special verdict form, the jurors will be instructed

6

to indicate the number of jurors who have found that Mr. Cisneros
was proven mentally retarded by a preponderance of the evidence.
If the jurors find unanimously that Mr. Cisneros is proven
mentally retarded by a preponderance of the evidence, the Court
shall find that Mr. Cisneros is not death eligible.  The
defendant will then be sentenced to life imprisonment without the
possibility of release, as required by statute.  If less than
twelve jurors find that Mr. Cisneros is mentally retarded, the
jurors who make that finding will be instructed to consider that
factor established in considering whether or not a sentence of
death shall be imposed, regardless of the number of jurors who
agree that mental retardation has been established.

## IV. CONCLUSION

For the foregoing reasons, the Defendant's Proposed
Procedures for Determining Mental Retardation are GRANTED IN
PART.

The Clerk is directed to forward a copy of this Order to
counsel of record.

ENTERED this __24th__ day of August, 2005.

_____
        /s/_____
        Gerald Bruce Lee
        United States District Judge

Alexandria, Virginia
8/24/05

7

<u>APPENDIX</u>

1.   Jury Instruction No. 11

2.   Ismael Juarez Cisneros' Special Verdict Form